**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01878-JMC |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO VACATE SUMMARY JUDGMENT DEADLINES**

Plaintiffs National Immigration Project for the National Lawyers Guild ("National Immigration Project") and American Immigration Council ("AIC") oppose Defendants Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE")'s motion to vacate the summary judgment deadlines. *See* ECF No. 34. At the outset, Plaintiffs agree that the parties should seek to narrow disputes where possible. But Defendants have not shown good cause to abolish the Court's previously-ordered summary judgment schedule and replace it instead with monthly status reports to be filed *in aeternum*. Defendants' belated request leaves the parties without a definite path to resolution and would instead reward the delay and inadequate disclosures that have impeded meaningful conferral throughout this case.

In the alternative, Plaintiffs respectfully do not oppose a sixty-day extension of the existing summary judgment deadlines, coupled with a prompt, date-certain deadline for Defendants to provide an adequate search description and *Vaughn* index before the parties confer further. As explained in more detail below, that limited relief would permit the parties to meaningfully confer while preserving a legal mechanism to resolve any remaining disputes through summary judgment.

Plaintiffs disagree that a "reasonable chance that the parties will be able to significantly narrow the disputed issues" is a sufficient basis to wholly vacate summary judgment briefing, particularly in this case where Defendants have not yet agreed to participate in any substantive discussions to narrow the issues. ECF No. 34 at 1. The Court should therefore deny Defendants' motion and adopt a practical alternative, extending the summary judgment deadlines to allow the parties to negotiate.

## I. BACKGROUND

Plaintiffs have sought an adequate description of Defendants' searches and meaningful explanations of disputed withholdings since at least January 2026. *See* Ex. A (Email Correspondence between O. Ayetiwa and B. Fithawi). Defendants repeatedly characterized those requests as premature, declined to provide any search description, and urged postponement of any merits schedule. *See* ECF No. 14 (Dec. 17, 2025 JSR); ECF No. 15 (Feb. 10, 2026 JSR); ECF No. 23 (Mar. 17, 2026 JSR); ECF No. 27 (May 6, 2026 JSR); ECF No. 28 (June 5, 2026 JSR); *see also* ECF No. 25 (Opposition to Motion to Stay).

The Court has already accommodated Defendants' requests for additional time. *See* July 17, 2026 Minute Order. On July 17, 2026, the Court granted Defendants a twenty-day extension over Plaintiffs' opposition, finding good cause for that brief extension and concluding it would not unduly delay the case. *Id*. The Court ordered Defendants to complete production by August 4, 2026 and set firm summary judgment deadlines, including September 14, 2026 for Defendants' opening motion. *Id.* Defendants failed to complete production by the Court-ordered August 4 deadline and only on August 17, 2026, did Defendants finally represent that their production was

complete. *See* Exs. B-C (Email Correspondence Between S. Perigo and B. Fithawi).[1] Contrary to Defendants' representation, however, Plaintiffs still have not received pages that ICE referred to DHS Headquarters for direct response in April 2026 or any explanation regarding why these pages are being withheld.

## II. ARGUMENT

Defendants have not demonstrated good cause for, much less justified, their request for indefinite relief from all summary judgment deadlines. Fed. R. Civ. P. 6(b)(1)(A). Instead, Defendants propose monthly status reports without any requirement for Defendants to provide the information necessary for Plaintiffs to evaluate Defendants' searches and withholdings, engage in meaningful conferral, or bring this case to resolution. Defendants' request leaves Plaintiffs without a timely path to resolution of this case and should be denied.

### A. Defendants' Last-Minute Request Does Not Establish Good Cause to Vacate the Court's Schedule

Defendants' request first should be denied as untimely. The Court's July 17, 2026 Minute Order set September 14, 2026 as the deadline for Defendants to file their opening summary-judgment motion. *See* July 17, 2026 Minute Order. Defendants waited until August 28 to inform Plaintiffs of their intent to seek vacatur. *See* Exs. B-C. In response, Plaintiffs proposed a limited extension, restated their requests for information, and identified issues for conferral. Rather than engaging in a discussion to narrow the issues, Defendants waited until 10:00 p.m. on September 14—less than two hours before their deadline to file their opening summary judgment brief—to provide an informal, incomplete, haphazard search summary and simultaneously file the present

[1] Exhibits B and C are emails sent between the parties regarding these issues. Responses were sent to different messages in the chain and as a result, no single version of the thread contains both S. Perigo's September 3, 2026, email and B. Fithawi's subsequent response on September 14, 2026.

motion. *See* Ex. C (Email Correspondence Between S. Perigo and B. Fithawi); *see also* Ex. D (Defendants' Attached Search Description).

The Court had already granted Defendants a twenty-day extension and set a firm schedule; Defendants' last-minute request for indefinite relief provides no basis to disregard that schedule. Their decision to wait until the eve of the filing deadline to provide a search description and seek vacatur only offers further evidence of why set deadlines are required to move this case forward.

**B. Defendants' Failure to Confer in Good Faith Provides No Basis for Vacatur**

Defendants' behavior here demonstrates that Defendants seek to evade accountability by avoiding any deadlines under the guise of cooperation. Plaintiffs have repeatedly identified the requested information, and Defendants have continued to avoid providing it. Only on the eve of a deadline have Defendants tried to demonstrate enough conferral to avoid summary judgment briefing.

Most recently, on August 19, Plaintiffs requested specific information that would allow for a meaningful assessment of the searches Defendants conducted. Specifically, Plaintiffs requested that Defendants identify the offices, systems, locations, and repositories searched; the custodians or personnel from whom records were collected; the search terms used; any date ranges applied; and the basis for concluding that the searched locations were reasonably likely to contain responsive records. *See* Ex. B at 5-7; Ex. C at 2-4. Plaintiffs also identified concrete examples of documents that referenced other documents that were not included in Defendants' production and warranted reasonable follow-up, *e.g.*: the "guidance received on February 7, 2025, by the ICE Front Office"; Acting ICE Director Vitello's guidance on ICE custody releases; and the "ERO Release Report." *Id.* Finally, Plaintiffs requested a draft *Vaughn* index, or equivalent document-

specific descriptions, identifying the basis for each exemption and the foreseeable harm from disclosure. *Id.*

On August 28, Defendants largely refused to provide this information, seeming to condition cooperation with these requests on Plaintiffs' abandonment of all remaining withholding challenges; only then did Defendants state that they "may" be willing to provide a search description. *See* Ex. B at 4 (Defendants' refusal and conditional cooperation), 1-3 (Plaintiffs' detailed response less than one week later, with no response from Defendants); *see also* Ex. C. They finally produced a bare-bones search description at 10 p.m. on September 14—the day their summary judgment motion was due. *See* Ex. C (Email Correspondence Between S. Perigo and B. Fithawi); *see also* Ex. D (Defendants' Attached Search Description). This timing alone undermines any claim of genuine engagement on behalf of the Defendants.

The content of Defendants' eleventh-hour search description further confirms this point. It provides only fragments of the requested information and no meaningful account of Defendants' search methodology. It omits the temporal scope of their search; the rationale for selecting particular custodians, repositories, and search terms; and the search mechanics, including whether Boolean searches were performed and, if so, the search strings used.

The submission describes only ICE's searches, but says nothing about DHS's searches—even though DHS is a named Defendant. *See* Ex. D. The status of the April 2026 DHS referral also remains unaddressed. *Id.* Although the Office of the Principal Legal Advisor ("OPLA") conducted no search because it concluded it was not reasonably likely to possess responsive records, Defendants provide no factual foundation for that conclusion. That unexplained decision is particularly troubling because Plaintiffs' requests expressly seek legal and policy guidance concerning ICE's release-approval policy and the implementation of Executive Order 14165 and

Presidential Proclamation 10888—subjects on which ICE's principal legal office would reasonably be expected to possess responsive records. Defendants' unexplained decision not to search OPLA therefore contradicts their assertion that they searched all locations reasonably likely to contain responsive records. *Democracy Forward Found. v. U.S. Dep't of Just.*, Civil Action No. 17-1877, 2022 WL 17177497, at *6 (D.D.C. Nov. 23, 2022) (finding an agency's foundation insufficient to justify its decision not to search).

Nor does the submission provide the document-specific withholding descriptions Plaintiffs requested. *See* Exs. B-C (requesting "a draft *Vaughn* index, or equivalent descriptions sufficient to allow Plaintiffs to evaluate Defendants' asserted exemptions," including "the basis for each exemption and the foreseeable harm from disclosure"). Rather, the September 14 submission expressly disclaims being a final *Vaughn* index or agency declaration and reserves all Defendants' positions. *See* Ex. D. It confirms that material disputes remain, and demonstrates Defendants' unwillingness to provide equivalent document-specific descriptions. Defendants' "indicat[ion]" that they are willing to provide a *Vaughn* index "at a later time" is meaningless in light of their conduct to date. ECF No 34 at 1.

These are not technical deficiencies. By withholding the information necessary to assess the adequacy of their search and the propriety of their remaining withholdings, Defendants have foreclosed the very conferral process they invoke as the basis for vacatur. Their request thus does not reflect a genuine effort to confer; it seeks to use the absence of meaningful disclosure to obtain indefinite relief from the Court's summary-judgment schedule. Vacating the deadlines on that basis would reward Defendants' delay and insulate them from accountability.

### C. Any Extension Should Be Limited and Subject to Firm Deadlines

The Government's proposal does not facilitate meaningful discussions; it asks the Court to postpone briefing while leaving Defendants free to indefinitely ignore Plaintiffs' requests for information. The existence of a briefing schedule poses no obstacle to good-faith conferral. To the contrary, it prompted Defendants' only—albeit deficient—September 14 submission. If the Court concludes that limited additional time is necessary, a sixty-day extension would permit targeted conferral while preserving an orderly resolution of this already-delayed FOIA matter.

At a minimum, the Court should require Defendants to produce a *Vaughn* index promptly and before any re-set summary-judgment deadline. Courts may require an agency to provide a *Vaughn* index before summary judgment briefing where delayed processing would otherwise deprive a requester of a meaningful opportunity to evaluate and challenge asserted withholdings. *See ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (ordering production of a *Vaughn* index without a summary judgment schedule in place because the agencies' "glacial pace" reflected indifference to FOIA's commands and failed to ensure government accountability). This Court has repeatedly granted such requests. *See, e.g.*, *Defense of Freedom Institute for Policy Studies, Inc. v. U.S. Department of Education*, No. 1:24-cv-814, Dkt. 24 (D.D.C. Dec. 9, 2024) (maintaining the deadline for production of a *Vaughn* index but granting a one-month extension for summary judgment briefing); *Institute for Energy Research v. Federal Energy Regulatory Commission*, No. 1:23-cv-488, Minute Order (D.D.C. Jan. 16, 2024) (ordering production of a *Vaughn* index without a summary judgment briefing schedule in place); *Wilderness Workshop v. U.S. Department of Agriculture*, No. 1:22-cv-3606, Minute Order (D.D.C. Mar. 13, 2023) (ordering a draft *Vaughn* index over one month prior to summary judgment briefing).

Defendants' long-delayed and admittedly informal descriptions are no substitute for that information. Accordingly, if the Court grants any additional time, Plaintiffs request that the Court impose prompt, date-certain deadlines for Defendants to provide an adequate search description and *Vaughn* index before the parties confer and well before summary-judgment briefing.

## III. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to vacate the briefing deadlines. If the Court concludes that additional time would facilitate the parties' discussions, Plaintiffs do not oppose that it instead:

1. Extend the summary judgment deadline by sixty days, including moving Defendants' opening-motion deadline from September 14, 2026 to November 13, 2026, and correspondingly extending each later deadline;
2. Require Defendants, by October 2, 2026, to serve Plaintiffs with a draft search declaration and a draft *Vaughn* index sufficient to permit Plaintiffs to evaluate the adequacy of searches and asserted withholdings; and
3. Require the parties to meet and confer within seven days after that submission.

Dated: September 16, 2026

Respectfully submitted,

/s/ Linnea Cipriano
Linnea Cipriano (NY Bar No. 4913158)
Lauren Kuehn Pelletier (NY Bar No. 5581160)
Olubukola Ayetiwa (NY Bar No. 6063523)
Shauna Perigo (NY Bar No. 6277495)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: +1 212 813 8800
Fax: +1 212 355 3333
LCipriano@goodwinlaw.com
LPelletier@goodwinlaw.com
OAyetiwa@goodwinlaw.com
SPerigo@goodwinlaw.com
Admitted *pro hac vice*

Cassandra Snyder (DC Bar No. 1671667)
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036-1612
Tel: +1 202 346-4218
Cassandrasnyder@goodwinlaw.com

*Counsel for Plaintiffs*

Yulie Landan (CA Bar No. 348958)*+
National Immigration Project
1763 Columbia Rd. N.W.
Suite 175 #896645
Washington, DC 20009
(504) 569-5650
yulie@nipnlg.org

*Pro hac vice application forthcoming
+ Not admitted in DC; working remotely from New York and admitted in California only

*Counsel for Plaintiff National Immigration Project*

Chris Opila (DC Bar No. 90029724)
Raul A. Pinto (DC Bar No. 90013180)
AMERICAN IMMIGRATION COUNCIL

PMB2026
2001 L Street N.W., Suite 500
Washington, DC 20036
(202) 507-7699
copila@immcouncil.org
rpinto@immcouncil.org

*Counsel for Plaintiff American Immigration Council*